**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RACHEL S.,[1] | ) |
| | ) No. 23 CV 2341 |
| Plaintiff, | ) |
| | ) |
| v. | ) Magistrate Judge Young B. Kim |
| | ) |
| FRANK BISIGNANO, Commissioner | ) |
| of Social Security, | ) |
| | ) March 6, 2026 |
| Defendant. | ) |

**MEMORANDUM OPINION and ORDER**

Rachel S. seeks disability insurance benefits and supplemental security income on the basis that a combination of physical and mental impairments prevents her from working. She brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her applications for benefits. For the following reasons, Rachel's remand request is denied:

**Procedural History**

Rachel filed benefits applications in December 2017 claiming disability onset on October 25, 2017. (Administrative Record ("A.R.") 18, 277-83.) After her applications were denied at the administrative level, (id. at 71-83, 85-116), she sought and was granted a hearing before an Administrative Law Judge ("ALJ"), at which she and a vocational expert ("VE") testified, (id. at 37-70). The ALJ concluded in

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Rachel's first name and last initial in this opinion to protect her privacy to the extent possible.

September 2022 that Rachel is not disabled.  (Id. at 18-30.)  After the Appeals Council denied Rachel's request for review, (id. at 1-7), she sought judicial review, and the parties consented to this court's jurisdiction, 28 U.S.C. § 636(c); (R. 5).

**Analysis**

Rachel argues that the ALJ: (1) improperly evaluated her subjective symptom statements; (2) incorrectly assessed the psychological consultative examiner's ("CE") opinion; and (3) failed to supply substantial evidence to support the assigned residual functional capacity ("RFC").  (See generally R. 13, Pl.'s Br.)  When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and the decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted).  This deferential standard precludes the court from reweighing evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record compels" it.  *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted).  However, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations," *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021), and "provide an explanation . . . that is 'sufficient to allow [the] reviewing court[ ] to assess the validity of the agency's ultimate findings and afford [the claimant] meaningful judicial review,'" *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (quoting

*Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)).  Viewing the record under this standard, remand is not warranted here.

## A.     Symptom Evaluation

The court turns first to Rachel's argument that the ALJ did not properly evaluate her symptom statements because that analysis informs several aspects of the ALJ's decision, including the RFC assessment.  (R. 13, Pl.'s Br. at 15-16.)  An ALJ's symptom evaluation is entitled to great deference and may be reversed only where "patently wrong." *Murphy v. Colvin*, 759 F.3d 811, 815-16 (7th Cir. 2014).  The ALJ must consider factors like medication efficacy and side effects, daily activities, treatment received, and precipitating pain factors.  SSR 16-3p.  That said, the court will not disturb a subjective symptom evaluation that is logically based on specific findings and evidence.  *See Murphy*, 759 F.3d at 815-16.

Rachel first argues that the ALJ should not have relied on her "desire to work and past ability to work" to discount her subjective allegations.  (R. 13, Pl.'s Br. at 15.)  Regarding her desire to work, the ALJ noted Rachel's reports to her vocation rehabilitation counselor that she "wanted to change careers from occupational health safety to teaching and immediately return to work."  (A.R. 25 (citing e.g., id. at 522-23 (August 2018 record noting that Rachel was "pursuing teaching jobs"), 526 (July 2018 record noting that Rachel was "motivated to find permanent gainful employment" and was "interested in changing careers from occupational health safety to teaching"), 535 (July 2018 record noting that Rachel was "pursuing full-time work as a Substitute Teacher").)  Rachel contends that her desire to work says

nothing about her ability to do so on a full-time basis. (R. 13, Pl.'s Br. at 15.) The government counters that an ALJ may consider the "obvious discrepancy" between "tell[ing] prospective employers you are able to work while at the same time telling the federal government you cannot," citing *Hughes v. Colvin*, 664 Fed. Appx. 587 (7th Cir. 2016), for support. (R. 19, Govt.'s Mem. at 12-13.)

In *Hughes*, the Seventh Circuit found that an ALJ properly discredited a claimant's allegations to the Social Security Administration ("SSA") that he could not work while simultaneously informing state unemployment authorities that he was "ready, willing, and able to work." 664 Fed. Appx. at 591. Here too, the ALJ relied on Rachel's pursuit of "full-time work" to discount her subjective allegations. (A.R. 25 (noting that after her disability onset date, Rachel "signed up to be a caregiver to female patients, interviewed for a managerial position in occupational safety, and worked as a substitute teacher for kids with special needs").) The court is mindful that an ALJ cannot equate an interest in working full time with the ability to do so. *See Lowe v. Saul*, No. 18 CV 428, 2020 WL 439413, at *5 (N.D. Ind. Jan. 9, 2020) ("The desire to work or to volunteer does not equate to a finding of no disability."). But here, the ALJ inferred that Rachel could perform teaching and other jobs based on Rachel's active pursuit of those same jobs—all while telling the SSA that she could not sustain full-time work. (A.R. 25.) The ALJ did not err in considering this evidence when assessing Rachel's subjective allegations. *See Schmidt v. Barnhart*, 395 F.3d 737, 746 (7th Cir. 2005) ("[W]e are not convinced that a Social Security claimant's decision to apply for unemployment benefits and represent to state authorities and

4

prospective employers that he is able and willing to work should play absolutely *no role* in assessing his subjective complaints of disability." (emphasis in original)).

Rachel also argues that the ALJ unfairly relied on her past work as a part-time substitute teacher to find that she could sustain full-time employment. (R. 13, Pl.'s Br. at 15.) But while it is true that ALJs may not "draw conclusions about a claimant's ability to work full time based on part-time employment," *Weaver v. Berryhill*, 746 Fed. Appx. 574, 579 (7th Cir. 2018), the ALJ was entitled to consider Rachel's work history, and the fact that she "could perform some work cuts against [her] claim that [she] was totally disabled," *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008); *see also Hahn v. Kijakazi*, No. 22-1106, 2022 WL 6628832, at *2 (7th Cir. Oct. 11, 2022) (holding that ALJ properly discredited subjective allegations regarding claimant's need for limited social interactions where claimant worked part time in a setting involving "frequent interactions with others"). The ALJ also correctly noted that although Rachel stopped substitute teaching, she did so on her attorney's advice pending the appeal of her benefits applications. (See A.R. 20 (citing id. at 909-10 (December 2018 vocational rehabilitation record noting Rachel's disability lawyer advised her not to work during the appeal of her benefits applications), 1054-55 (January 2019 record noting same), 1286 (March 2020 record noting vocational assistance has been on hold for a year), 1526 (March 2019 record noting Rachel will not search for employment until she receives disability benefits or "decides to stop appealing"), 1544 (February 2019 record noting Rachel "put job searching on hold" pending benefits appeal).

Rachel further asserts that the ALJ failed to acknowledge that when she worked, it was on "an abbreviated schedule—not on a 'regular and consistent' basis." (R. 13, Pl.'s Br. at 15.) But the government responds that no evidence supports this allegation, and in fact, the record seems to contradict it. (R. 19, Govt.'s Mem. at 19 (citing A.R. 945 (reflecting that Rachel worked "several consecutive days" in a "special needs" classroom without "major challenges").) As to Rachel's allegation that she experienced foot pain while performing her past work, the ALJ found that after the pain improved, (see A.R. 21 (citing id. at 2455-56 (September 2020 provider record noting Rachel's metatarsal pain improved with orthotics)), Rachel was "able to exercise for long periods, walk for exercise, do workout videos, bike trails, golf, and vacation in Florida and elsewhere without reports of ambulation or strength deficits," (id. at 26 (citing e.g., id. at 2054 (December 2021 chiropractic record noting Rachel had vacationed in Florida), 2134-39 (September 2021 kinesiotherapy record detailing stair climbing, stretching, strengthening, and balancing exercises Rachel was performing), 2158 (September 2021 kinesiotherapy record reporting Rachel was doing "a lot of bike riding on the trails")). When assessing Rachel's symptom statements, the ALJ did not equate her past work with the ability to work full-time and appropriately considered the reason she stopped teaching.

Rachel next complains about the ALJ's assessment of her daily activities, including her ability to exercise, bike, golf, and vacation. (R. 13, Pl.'s Br. at 15-16.) Rachel says the ALJ was required to explain how these activities undermine her subjective allegations, (id.), but her assertion ignores the ALJ's analysis. Indeed, the

6

ALJ explained that Rachel's subjective allegations—namely, that she could stand for only 10 to 15 minutes, walk for 15 minutes, sit for 20 to 30 minutes, and lift 5 to 10 pounds—were inconsistent with the wide array of activities she enjoyed. (A.R. 24, 26.) While "ALJs may not "equat[e] activities of daily living with an ability to work," they must "examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of [her] impairments was credible or exaggerated." *Hahn*, 2022 WL 6628832, at *2 (citations omitted). The ALJ here properly considered Rachel's daily activities when evaluating her symptom statements. *See* SSR 16-3p.

Finally, Rachel contends that the ALJ erred by relying on a "large gap" in mental health treatment records to discount Rachel's allegations. (R. 13, Pl.'s Br. at 16 (citing A.R. 27 (noting "a large gap in treatment in 2021")).) Rachel says this was a mistake because "the record shows extensive mental health counseling." (Id.) The government concedes that the ALJ erred on this point but argues remand is not warranted because the ALJ provided other substantial evidence—including medical opinion evidence showing "essentially normal" mental status examinations ("MSEs") and "no severe physical impairments," in addition to the reasons set forth above—to support the symptom assessment. (R. 19, Govt.'s Mem. at 14; see also A.R. 24-28.) The court agrees with the government. "Because an ALJ need only assert a single valid reason to support [the symptom evaluation], the ALJ's analysis here is not patently wrong." *Dewayne D. v. Kijakazi*, No. 21 CV 149, 2023 WL 6976897, at *3 (N.D. Ill. Oct. 23, 2023); *see also Grotts v. Kijakazi*, 27 F.4th 1273, 1278-79 (7th Cir.

7

2022) ("As long as an ALJ gives specific reasons supported by the record, [the court] will not overturn a credibility determination unless it is patently wrong."). Accordingly, remand is not warranted on this ground.

## B.     Opinion Evidence

Rachel next argues that the ALJ incorrectly evaluated the CE's opinion finding she has a "fair" ability to function. (R. 13, Pl.'s Br. at 5-8.) An ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, he must assess the persuasiveness of all medical opinions by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to assess how the opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how he considered the medical source's specializations and relationship with the claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

A CE performed a psychological evaluation for Rachel in September 2018. (A.R. 832-36.) As part of the evaluation, the CE reviewed Rachel's medical and

psychiatric records from the Veterans Affairs ("VA") Medical Center.[2]  (Id. at 832.)
The CE discussed Rachel's history of "depression, PTSD, CAPD—central auditory
processing disorder, alcohol abuse, opioid dependence," and psychiatric treatment.
(Id. at 833, 835.)  On examination he described Rachel's affect as "flat, irritable and
agitated" and her mood as "depressed and restless."  (Id. at 834.)   Based on his
findings, the CE determined that Rachel had a "fair" ability to relate to others,
understand, remember, and follow simple instructions, maintain the attention and
concentration needed to perform simple, repetitive tasks, and withstand stress
associated with day-to-day work.  (Id. at 835.)

The ALJ found the CE's opinion unpersuasive because it was seemingly based
on Rachel's subjective reports, and the CE's evaluation was limited to one
appointment during which Rachel's MSE was "essentially normal."  (Id. at 27.)
Nevertheless, the ALJ relied on the CE's underlying findings when assessing the
paragraph B criteria, including by noting that during the consultative examination
Rachel "exhibited no impairment in calculations, general knowledge, ability to
compare and contrast objects, judgment, or abstract thinking relative to interpreting
proverbs and her memory was good." (Id. at 22.)  As a result, the ALJ found that she
is only moderately limited in her ability to understand, remember, or apply
information.  (Id.)   In determining that Rachel is moderately limited in her
interactions with others, the ALJ also relied on the CE's findings that despite a flat
affect and depressed mood, Rachel was cooperative and "able to relate adequately

---

[2]  Rachel served in the U.S. Army for eight years.  (A.R. 833.)

with appropriate behavior." (Id.) And with respect to concentration, persistence, and pace ("CPP"), the ALJ based his moderate finding in part on Rachel's "performance upon mental status testing at the consultative examination." (Id.)

Rachel nonetheless argues that the ALJ failed to supply substantial evidence to support his evaluation of the CE's opinion. (R. 13, Pl.'s Br. at 5-8.) Rachel says the ALJ improperly focused on the CE's "one-time" interaction with her to reject the opinion and notes that this reasoning could "invalidate all consultative examinations." (Id. at 6.) The court shares Rachel's concerns because while an ALJ may consider the nature of a provider's relationship with the claimant, the most important factors are supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2). But here the ALJ explained why the CE's own examination findings supported no more than moderate limitations in Rachel's ability to function. (See A.R. 22; see also id. at 78 (noting state agency psychologist's findings that the consultative examination supported "mild to moderate impairment on cognitive domains of MSE").)

Rachel next complains that the ALJ improperly dismissed the CE's opinion based on her subjective allegations and unfairly characterized her MSE as "essentially normal." (R. 13, Pl.'s Br. at 5-6.) As to Rachel's symptom statements, the Seventh Circuit has made clear that an "opinion may be properly discounted . . . if it is based upon the claimant's subjective complaints rather than objective medical evidence." *Ghiselli v. Colvin*, 837 F.3d 771, 776 (7th Cir. 2016). As such, the ALJ did not err by discounting aspects of the CE's opinion that were based on Rachel's

subjective allegations. Additionally, as the government points out, the ALJ never said Rachel's MSE was "*completely* normal." (R. 19, Govt.'s Mem. at 4 (emphasis in original).) He acknowledged Rachel's "flat affect and irritated or agitated mood" during the consultative examination and determined that her depression and PTSD qualify as severe impairments at step two. (A.R. 20, 27.) But the ALJ also found that the examination showed "essentially normal" results because Rachel was "cooperative" and "able to relate adequately with appropriate behavior," she drove to the examination and "exhibited no impairment in calculations, general knowledge, ability to compare and contrast objects, judgment, or abstract thinking," and "her memory was good." (Id. at 27.) When the state agency psychologist reviewed the CE's evaluation, she confirmed that the MSE was within normal limits. (Id. at 78.) Thus, the ALJ sufficiently articulated why he found the CE's opinion unpersuasive.

Finally, Rachel contends that the ALJ "failed to reckon with the fact that the [CE] reviewed VA Medical Center records" when "reaching conclusions" about her ability to function.[3] (R. 13, Pl.'s Br. at 7; see also A.R. 27, 832.) This omission, she says, shows that the ALJ failed to afford the opinion the greater weight it required. (R. 13, Pl.'s Br. at 7; see also R. 19, Govt.'s Resp. at 5.) For support, Rachel points to specific VA records in which she reported difficulty concentrating, frequent panic attacks, depressed mood, and feeling isolated. (R. 13, Pl.'s Br. at 7 n.1 (citing, e.g.,

---

[3] Notably, Rachel does not argue that the ALJ failed to consider her VA medical, psychiatric, and other records. (See generally R. 13, Pl.'s Br.) Nor could she, as the ALJ cited to such records in his decision. (See, e.g., A.R. 22, 26, 27 (citing VA records included in Exhibits 20F, 21 F, and 23F).)

A.R. 527-28 (July 2018 record noting Rachel's reports of "intrusive memories" and "passive thoughts of wishing to be dead"), 538 (July 2018 record noting Rachel's reports of panic attacks occurring several times a week), 545 (July 2018 record noting Rachel's endorsement of depressed mood).) Rachel also cites VA records reflecting "sad," "tearful," and "dysphoric mood" on examination. (See id. (citing A.R. 552 (July 2018 record reflecting Rachel's "sad" mood), 948 (October 2018 record describing Rachel as "tearful and w/dysphoric mood")).) The government agrees that the ALJ could have said more about the VA records but contends that even if he had, his analysis would not have changed because "[the CE's] exam was—as the ALJ correctly noted—essentially normal." (R. 19, Govt.'s Mem. at 5; see also A.R. 28.) As discussed, the ALJ properly discounted the severity of the symptoms Rachel alleged. And Rachel does not explain how the notations to which she points require remand. In short, because the ALJ acknowledged Rachel's flat affect and depressed mood, found her depression and PTSD qualify as severe impairments, and provided substantial evidence to support his consideration of the CE's opinion, (A.R. 20, 22, 27), remand is not appropriate here.

**C.      RFC**

Rachel asserts that the ALJ erred when crafting both her physical and mental RFCs. (R. 13, Pl.'s Br. at 8-14.) An RFC measures the tasks a person can perform given her limitations based on "all the relevant evidence" in the administrative record. 20 C.F.R. § 404.1545(a)(1); see also Pepper v. Colvin, 712 F.3d 351, 362 (7th Cir. 2013). When developing the RFC, the ALJ must incorporate a claimant's

limitations, including those that are not severe, and may not dismiss a line of evidence that is contrary to the ruling. *Bruno v. Saul*, 817 Fed. Appx. 238, 242 (7th Cir. 2020). In so doing, the ALJ must "say enough to enable review of whether she considered the totality of a claimant's limitations," *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022), providing a "logical bridge" between the evidence and her conclusions, *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021).

With respect to the physical RFC assessment, Rachel argues that the ALJ improperly found her capable of performing a range of light work with exertional, manipulative, audible, and environmental limitations. (R. 13, Pl.'s Br. at 8-12.) Rachel acknowledges that the state agency physicians determined that she had no severe physical impairments as of February 2019, but says the ALJ failed to consider the "wealth of abnormal evidence post-dating any doctor's review." (Id. at 8 (citing A.R. 77, 93, 109).) The government responds that the ALJ, not Rachel, decides whether "additional expert input is needed." (R. 19, Govt.'s Mem. at 7.) Moreover, the ALJ has "'final responsibility' for determining a claimant's [RFC] and need not adopt any one doctor's opinion." *Fanta v. Saul*, 848 Fed. Appx. 655, 658 (7th Cir. 2021). This court concludes that the ALJ here properly "considered [Rachel's] treatment for shoulder, hip, neck, and low back pain in 2020 through 2022" and limited her physical RFC accordingly. (A.R. 26 (citing record evidence supporting the assessed RFC).)

Indeed, it was within the ALJ's discretion not to seek additional expert opinion evidence to assist him in crafting the physical RFC. *See Keys v. Berryhill*, 679 Fed.

13

Appx. 477, 481 (7th Cir. 2017) ("If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." (citation omitted)). Regardless, the ALJ supplied substantial evidence to support the physical RFC he assessed. For starters, he relied on the CE's "essentially normal" findings during the September 2018 consultative examination. (A.R. 26 (citing id. at 838-42 (noting history of chronic neck pain, bilateral shoulder pain, wrist issues, and vertigo but finding on examination no deformities or swelling, normal range of motion and gait, and negative straight leg test).) The ALJ also determined that Rachel's daily activities, including "exercis[ing] for long periods, walk[ing] for exercise, do[ing] workout videos, bik[ing] trails, golf[ing], and vacation[ing] in Florida and elsewhere without reports of ambulation or strength deficits," suggest a greater level of functioning than Rachel alleges. (Id.) And while the ALJ generally found the opinions of Rachel's treating physician, Dr. Janice Wood, unpersuasive, he nonetheless limited Rachel's fine and gross manipulation based on Dr. Wood's opinion endorsing pain and difficulty performing repetitive hand activities. (Id. (citing id. at 1136-38, 1149-53).)

Lastly, Rachel contends that the ALJ failed to provide "a supported basis" for the mental RFC he assessed and, as a result, it is "unclear how [he] determined the mental RFC." (R. 13, Pl.'s Br. at 12-14.) When developing Rachel's mental RFC, the ALJ found Rachel capable of: "understand[ing], remember[ing], and carry[ing] out simple instructions"; "us[ing] judgment to make simple work-related decisions"; "tolerat[ing] occasional interactions with supervisors and coworkers" but "no

14

interactions with the general public"; satisfying "end of day quotas" but not "work requiring a specific production rate such as assembly line work"; and "deal[ing] with occasional changes in a routine work setting." (A.R. 23.)

She first suggests the mental RFC lacks the support of substantial evidence because "[n]o doctor opined to this specific RFC finding." (R. 13, Pl.'s Br. at 12.) But as discussed, an ALJ, not a doctor, determines a claimant's RFC. *See Fanta*, 848 Fed. Appx. at 658. Second, Rachel contends that the ALJ does not provide a "supported rationale" for the limitations he assessed, such as his determination that she could "carry out simple instructions not at a production pace." (R. 13, Pl.'s Br. at 12.) However, the ALJ explained that because of Rachel's moderate CPP limitation, he restricted work requiring "a specific production rate." (A.R. 27; see also id. at 22-23.) And given Rachel's moderate limitation in understanding, remembering, and applying information, he limited her to "carry[ing] out simple instructions and us[ing] judgment to make simple work-related decisions." (Id. at 27.) These explanations, combined with his analysis of the paragraph B criteria and other record evidence, provide substantial evidence to support the assessed mental RFC. (See id. at 22-28.)

Finally, Rachel challenges the ALJ's "fail[ure] to explain whether the record did or did not support off-task time." (R. 13, Pl.'s Br. at 12-13.) As the government points out, however, the ALJ stated that the record does not support Dr. Wood's findings regarding Rachel's alleged need to take absences or her inability to "maintain[] a schedule and be[] on time."[4] (R. 19, Govt.'s Mem. at 10-22 (citing

_____

[4] Rachel does not challenge the ALJ's evaluation of Dr. Wood's opinions.

15

A.R. 27).)  Rachel cites to evidence she says supports "a need to work at a slower pace and spend significant time off-task," (id. at 13 & n.6), but this court cannot reweigh evidence, *Deborah M.*, 994 F.3d at 788.  Rachel also relies on her subjective allegations to support such restrictions, but the ALJ properly discounted them.  In short, Rachel fails to satisfy her burden of showing that greater limitations are warranted.  *See Kruckow v. Bisignano*, No. 23-2433, 2026 WL 27807, at *3 (7th Cir. Jan. 5, 2026).

## Conclusion

For the foregoing reasons, Rachel's remand request is denied, and the Commissioner's decision is affirmed.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**

16